Le Bleu Corp. v. B. Kelley Enters., Inc., 2014 NCBC 65.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 3109

LE BLEU CORPORATION; and SCP
DISTRIBUTION, LLC d/b/a LE BLEU
OF THE PIEDMONT TRIAD,

Plaintiffs,

v.

B. KELLEY ENTERPRISES, INC.
d/b/a BLUE CAFFE, INC.; ROBIN
LEBORGNE; and BRADLEY S.
KELLEY,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1}     THIS MATTER is before the Court on Defendants' Motion to Dismiss ("Motion"), made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  For the reasons expressed below, the Motion is DENIED. However, in its discretion and pursuant to Rule 12(e), the Court directs Plaintiffs to file a more definite statement of their trade secret claim.

*Wilson Helms & Cartledge, LLP by G. Gray Wilson and Stuart H. Russell for Plaintiffs.*

*Caudle & Spears, P.A. by Harold Craig Spears and Christopher P. Raab for Defendants.*

Gale, Chief Judge.

## I.     INTRODUCTION

{2}     The litigation is described in greater detail in the Court's November 21, 2014, Order.  *See Le Bleu Corp. v. B. Kelley Enters., Inc.*, 2014 NCBC LEXIS 62, at *1–3 (N.C. Super. Ct. Nov. 21, 2014).  The present Motion addresses only the trade secret claim and the claim for unfair and deceptive trade practices ("UDTP"),

insofar as it depends upon the trade secret claim, as added by the First Amended Complaint ("Amended Complaint"), which the Hon. Richard W. Stone, Forsyth County Superior Court Judge presiding, allowed over Defendants' arguments that the new claims were futile.

{3} Judge Stone's Order provides: "The court.considered [sic] the cases, arguments, and other submissions of counsel. After considering those items, it appears to the court that plaintiffs should be allowed to file the amended complaint attached to their motion. . . ." *Le Bleu Corp. v. B. Kelley Enters., Inc.*, No. 13 CVS 3109, at 1 (N.C. Super. Ct. June 23, 2014). It does not otherwise address futility.

{4} The first question presented is whether, in allowing the amendment, Judge Stone necessarily ruled that the trade secret claim is not futile. Assuming Judge Stone did not so rule, the second question is whether Plaintiffs have pleaded a trade secret claim that withstands Rule 12(b)(6).

{5} The Court finds that (1) the Motion is not foreclosed because this Court would not be overruling Judge Stone should it decide to dismiss the trade secret claim pursuant to Rule 12(b)(6); (2) the trade secret claim withstands Rule 12(b)(6); but (3) Plaintiffs must state the claim with greater specificity.

## II.     PARTIES

{6} Plaintiffs Le Bleu Corporation ("Le Bleu") and SCP Distribution, LLC ("Triad") manufacture, sell, and distribute bottled water in the Southeast.

{7} Defendant B. Kelley Enterprises, Inc. ("Blue Caffé") is a point-of-service water distributor that supplies in-house water filtration systems to businesses in North Carolina. Individual Defendants Robin Leborgne and Bradley S. Kelley are Blue Caffé Employees.

## III.     RELEVANT PROCEDURAL BACKGROUND

{8} Plaintiffs initiated this action on May 13, 2013. Plaintiffs subsequently moved to amend their original complaint. Defendants opposed the amendment on the basis that it was futile. On June 9, 2014, Judge Stone heard and

considered counsel's arguments and ultimately granted Plaintiffs leave to file their Amended Complaint. On June 27, 2014, Plaintiffs filed their Amended Complaint, adding Bradley S. Kelley as a Defendant and, inter alia, a claim for trade secret misappropriation, and a corresponding claim for unfair trade practices.[1]

{9}     On September 10, 2014, Defendants moved pursuant to Rule 12(b)(6) to dismiss Plaintiffs' trade secret misappropriation claim and the UDTP claim, to the extent it was based on the trade secret claim. Plaintiffs oppose the Motion on two grounds. First, they assert that Judge Stone's ruling necessarily rejected Defendants' futility argument so that now granting the Motion would impermissibly overrule Judge Stone's order. Second, Plaintiffs contend that they have adequately stated a trade secret claim.

## IV.   RELEVANT FACTUAL BACKGROUND

{10}     The Court does not here make fact findings, as a motion to dismiss does "not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). For purposes of this Motion, the Court assumes that the facts alleged in the Amended Complaint are true and makes appropriate inferences in Plaintiffs' favor, without assuming the truth of Plaintiffs' legal conclusions.

{11}     Plaintiffs claim that Defendants have lured away their customers by falsely stating that Plaintiffs' bottles are contaminated and by misappropriating Plaintiffs' trade secrets. Plaintiffs contend that their former employees, Terry Tuttle, Rob Morgan, and David Burris, unlawfully provided Blue Caffé with Plaintiffs' protected proprietary information, defined as "customer lists, pricing information, transaction histories, key contacts, and customer leads." (First Am. Compl. ¶ 30.) Plaintiffs identify two lists that were misappropriated but do not specify whether each list contains some or all of the proprietary information that Plaintiffs contend is entitled to trade secret protection.

---

[1] Defendants acknowledge that a valid trade secret claim may state a claim for an unfair or deceptive trade practice.

{12}     Plaintiffs allege that after Tuttle began working for Blue Caffé, he obtained a list containing proprietary information from Morgan, who was still working for Triad.  Plaintiffs further allege that Tuttle instructed Kelley to conceal the list from Le Bleu, to prevent Le Bleu from filing a lawsuit against him.  Tuttle also asked Morgan to use his knowledge of "leads and key contacts" to call Plaintiffs' customers on behalf of Blue Caffé.  (First Am. Compl. ¶ 33.)  Plaintiffs allege that Kelley and Blue Caffé encouraged Tuttle to continue working with Morgan and to use Morgan's contacts and leads with Plaintiffs' customers to set up meetings for Blue Caffé.  (First Am. Compl. ¶ 37.)

{13}     Blue Caffé also hired Triad's former employee, Burris, who brought his "Le Bleu list" with him to Blue Caffé.

{14}     Plaintiffs contend this information is entitled to trade secret protection and that they protected the information by requiring their employees to sign covenants not to compete, nondisclosure agreements, and agreements to return Plaintiffs' proprietary information upon termination.  (First Am. Compl. ¶ 39.)  Plaintiffs contend the information cannot be recreated from publicly available sources.

{15}     Defendants contend that the information does not rise to the level of trade secret and that Plaintiffs' remedy, if any, should be restricted to their claim for tortious interference with contract.

## V.     STANDARD OF REVIEW

{16}     The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).  A motion to dismiss may be granted if the complaint reveals the absence of facts required to make out a claim for relief or

if the complaint reveals some fact that necessarily defeats the claim. *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

## VI.    ANALYSIS

### A. <u>Judge Stone Did Not Necessarily Rule that the Trade Secret Claim Is Futile</u>

{17}    It is well established that one Superior Court judge may not "modify, overrule, or change the judgment of another Superior Court judge previously made in the same action" unless a substantial change in circumstance has occurred during the interim. *State v. Woolridge*, 357 N.C. 544, 549–50, 592 S.E.2d 191, 194 (2003) (quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972)).   Designating the case as a complex business matter and a assigning it to a Business Court judge does not constitute a substantial change in circumstances. *See DeGorter v. Capital Bancorp Ltd.*, 2014 NCBC LEXIS 63, at *9 (N.C. Super. Ct. Nov. 26, 2014) (rejecting plaintiff's argument that appointment of new judge and motion for reconsideration constitute substantial change in circumstances).

{18}    However, the Court finds that Judge Stone's order allowing the Amended Complaint does not indicate that Judge Stone necessarily ruled whether or not the trade secret claim is futile.  Accordingly, this Court may address the issue and could grant the Motion without overruling Judge Stone.

{19}    It is true that Judge Stone could have denied leave to amend upon finding that the proposed amendment is futile. *Cunningham v. Riley*, 169 N.C. App. 600, 603, 611 S.E.2d. 423, 425 (2005).  It is also clear that futility was among the other issues Judge Stone was asked to consider; but it was not the only issue before the court.  Judge Stone's order only stated that the court had considered counsel's "cases, arguments, and other submissions" and determined that the amendment should be allowed. *Le Bleu Corp.*, No. 13 CVS 3109, at 1.

{20}    Defendants acknowledge that a trial court may, but is not required to, deny a motion to amend on the basis of futility and urge that, even when presented with a futility argument, the trial court may apply Rule 15(a)'s liberal standards to allow the amendment and leave inquiry into the claim's futility to a subsequent

Rule 12(b)(6) motion. They contend that Judge Stone, in his discretion, did just that. Defendants concede that the standard for determining futility is essentially the same as the Rule 12(b)(6) standard for failure to state a claim, but argue that, absent an express finding that the claims are not futile, Judge Stone's order does not preclude subsequent consideration of a Rule 12(b)(6) motion.

{21} Plaintiffs counter that the Court should infer that Judge Stone found that the trade secret and corresponding UDTPA claims in the Amended Complaint are not futile because he should not be assumed to have allowed the amendment as "a mere pointless gesture." (Pls.' Br. Opp'n Defs.' Mot. Dismiss 3 (quoting *Estrada v. Jaques*, 70 N.C. App. 627, 636, 321 S.E.2d 240, 247 (1984)).)

{22} In *Estrada*, the North Carolina Court of Appeals determined that the trial court erred in granting summary judgment based on a statute of limitations defense where a previous Superior Court judge had allowed an amended complaint. The first Superior Court judge's order, allowing the amendment, did not state whether the new claims related back to the date of the original complaint. The new claims survived only if they related back; otherwise, they were time-barred. The North Carolina Court of Appeals held that the judge allowing the amendment impliedly determined that the newly added claims related back to the original complaint, based on the language of Rule 15(c), which provides that an "amended pleading will therefore relate back . . . if the new pleading constitutes a new cause of action, provided that the defending party had originally been placed on notice of the events involved." N.C. R. Civ. P. 15(c), cmt. The *Estrada* court found that the conditions of Rule 15(c) for relation back had been met, so the first judge's order fairly implied such a finding. The judge would not have allowed the amendment "as a mere pointless gesture." *Estrada*, 70 N.C. App. at 636, 321 S.E.2d at 247.

{23} The Court has carefully considered *Estrada*. Having done so, it determines that *Estrada* does not require the Court to infer that Judge Stone affirmatively ruled that Plaintiffs' trade secret claim was adequately stated. There were other reasons that may have motivated Judge Stone to allow the Amended Complaint.

{24}    Therefore, the Court concludes that Judge Stone's previous order does not preclude it from hearing the present Motion, because granting a motion to dismiss the trade secret claim included in the Amended Complaint would not be overruling Judge Stone.  The Court therefore addresses the Motion on its merits.

### B. The Motion Should Be Denied Because Plaintiffs Have Stated a Claim that Survives Rule 12(b)(6)

{25}    Defendants contend that Plaintiffs' trade secret claim should be dismissed on two grounds.  First, Defendants assert that Plaintiffs have not identified their trade secrets with sufficient specificity.  Second, Defendants argue that the information Plaintiffs have described does not amount to protectable trade secrets.

{26}    An owner of a trade secret "shall have remedy by civil action for misappropriation" of the secret.  N.C. Gen. Stat. § 66-153 (2014).  A trade secret is "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process" that derives commercial value from not being generally known or readily ascertainable through independent development or reverse engineering and is subject to reasonable security measures.  N.C. Gen. Stat. § 66-152 (2014).  Courts have looked to the following factors in determining whether information constitutes a trade secret:

> (1) The extent to which information is known outside the business;
> (2) the extent to which it is known to employees and others involved in the business;
> (3) the extent of measures taken to guard secrecy of the information;
> (3) the value of information to business and its competitors;
> (4) the amount of effort or money expended in developing the information; and
> (5) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wilmington Star-News v. New Hanover Reg'l Med. Ctr.*, 125 N.C. App. 174, 180–81, 480 S.E.2d 53, 56 (1997) (numbering mistake in original).

{27} To plead misappropriation of a trade secret, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003) (citations omitted). A plaintiff must also allege the acts by which the misappropriation was accomplished. *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Id.* at 327, 660 S.E.2d at 585–86 (quoting *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 511, 606 S.E.2d 359, 364 (2004) (citing *Analog Devices*, 157 N.C. App. at 469–70, 579 S.E.2d at 454)). For example, in *Washburn*, the North Carolina Court of Appeals held that allegations of "acquired knowledge of [a claimant's] business methods; clients, their specific requirements and needs; and other confidential information" did not sufficiently identify the trade secrets or misappropriation at issue. *Washburn*, 190 N.C. App at 327, 660 S.E.2d at 586. *But see Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 2002 NCBC LEXIS 2, at *38, 41–42 (N.C. Super. Ct. July 10, 2002) (ruling that customer information "including the identity, contacts and requirements" of customers can constitute a trade secret).

{28} By contrast, the North Carolina Court of Appeals has stated that allegations of misappropriation of "pricing information, customer proposals, historical costs, and sales data" sufficiently identifies trade secret information. *GE Betz, Inc. v. Conrad*, ___ N.C. App. ___, 752 S.E.2d 634, 648–49 (2013), *petition for disc. rev. filed on other grounds*, No. 111P10-2 (N.C. Jan. 7, 2014). Moreover, historical "data regarding operating and pricing policies can also qualify as trade secrets" when the misappropriator uses the information competitively. *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375, 542 S.E.2d 689, 693 (2001) (internal citation omitted). A federal court applying North Carolina law determined

that allegations that a defendant misappropriated a plaintiff's pricing methodology to underbid the plaintiff sufficiently identified the trade secret and the means of misappropriation. *ACS Partners, LLC v. Americon Grp., Inc.*, No. 3:09-CV-464-RJC-DSC, 2010 U.S. Dist. LEXIS 19907, at *27–29 (W.D.N.C. Feb. 12, 2010).

{29} In the present case, Plaintiffs have identified more than the generalized information at issue in *Washburn*. Rather, the allegations in the Amended Complaint, that Defendants misappropriated Plaintiffs' "customer lists, pricing information, transaction histories, key contacts, and customer leads," *Le Bleu Corp.*, No. 13 CVS 3109, at 1, is more comparable to allegations found sufficient in *GE Betz*.

{30} The Court concludes that Plaintiffs have made sufficient allegations to withstand dismissal under Rule 12(b)(6). Accordingly, the Motion should be DENIED.

C. <u>In Its Discretion, the Court Directs Plaintiffs to Make a More Definite Statement of Their Trade Secret Misappropriation Claim</u>

{31} In its discretion, the Court may treat a motion to dismiss under Rule 12(b)(6) as a motion for a more definite statement under Rule 12(e). *Page v. Mandel*, 154 N.C. App. 94, 97, 571 S.E.2d. 635, 637 (2002) (citing *Manning v. Manning*, 20 N.C. App. 149, 154, 201 S.E.2d 46, 50 (1973)).

{32} Plaintiffs have stated their trade secret claim adequately enough to withstand immediate dismissal under Rule 12(b)(6). However, whether "pricing information, transaction histories, key contacts, and customer leads," *Le Bleu Corp.*, No. 13 CVS 3109, at 1, actually constitute trade secrets depends upon the contents of the materials at issue. A price list may constitute a trade secret where it contains pricing information, market forecasts, and feasibility studies, but may not if it consists of raw information without any methodology. *See ACS Partners*, 2010 U.S. Dist. LEXIS 19907, at *28 (citing *N.C. Elec. Membership Corp. v. N.C. Dept. of Econ. & Cmty. Dev.*, 108 N.C. App. 711, 718, 425 S.E.2d 440, 444 (1993)); *see also Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478, 528

S.E.2d 918, 922 (2000) (holding that information from "customer lists and other compilations of customer data" was easily accessible through a telephone book and did not constitute trade secrets). Those determinations are better made when the claim is more definitely pleaded.

{33} The Court directs Plaintiffs to file a more definite statement of the trade secret claim that specifically describes the contents of both lists and why the information is entitled to trade secret protection. Plaintiffs' further discovery in support of their trade secret claim should be held in abeyance pending such amendment.

## VII. CONCLUSION

{34} For the foregoing reasons and pursuant to Rule 12(e), Plaintiffs are directed to file a more definite statement of their trade secret claim, as provided by the Order, within twenty (20) days. Defendants' Motion to Dismiss is DENIED.

This the 9th day of December, 2014.