Progress Point One-B Condo. Ass'n, Inc. v. Progress Point One Prop. Owners Ass'n, Inc., 2015 NCBC 20.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 467

PROGRESS POINT ONE—B                      )
CONDOMINIUM ASSOCIATION, INC.,            )
        Plaintiff                     )
                                      )
        v.                            )      **OPINION AND ORDER ON**
                                      )      **MOTION TO DISMISS**
PROGRESS POINT ONE PROPERTY               )
OWNERS ASSOCIATION, INC.,                 )
        Defendant                     )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendant's Motion to Dismiss and Alternative Motion for More Definite Statement,[1] pursuant to Rule 12(b)(6) and Rule 12(e) of the North Carolina Rules of Civil Procedure ("Rule(s)").  On February 13, 2015, the Court held a hearing on the Motions.

THE COURT, after considering the Motions, briefs in support of and in opposition to the Motions, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

> *Boxley, Bolton, Garber & Haywood, LLP by Ronald H. Garber, Esq. for Plaintiff Progress Point One-B Condominium Association, Inc.*
>
> *Shanahan Law Group, PLLC by John E. Branch, III, Esq., Brandon S. Neuman, Esq., and Jeffrey M. Kelly, Esq. for Defendant Progress Point One Property Owners Association, Inc.*

---

[1] For the purpose of this Opinion and Order, the Court will refer to Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) as "Motion to Dismiss," and Defendant's Alternative Motion for More Definite Statement as "Motion for a More Definite Statement." Collectively, these will be referred to as "Motions."

McGuire, Judge.

PROCEDURAL HISTORY

1. On February 12, 2014, Plaintiff Progress Point One-B Condominium Association, Inc. ("Plaintiff") filed a Complaint against Defendant Progress Point One Property Owners Association, Inc. ("Defendant"). Plaintiff's action was designated No. 14 CVS 467 by the Clerk of Superior Court of New Hanover County. On February 28, 2014, before any responsive pleading was filed, Plaintiff filed an Amendment to Complaint (together, the Complaint and Amendment to Complaint will be referred to as "Amended Complaint").

2. The Amended Complaint contains fourteen causes of action ("Claims"). The Claims, as they appear to the Court, are as follows: Claim One (Collection of Assessments improperly levied), Claim Two (Declaratory Judgment), Claim Three (Conversion), Claim Four (Breach of Fiduciary Duty), Claim Five (Unjust Enrichment), Claim Six (Punitive Damages), Claim Seven (Demand for Accounting), Claim Eight (Demand for Access to Documents), Claim Nine (Declaratory Judgment), Claim Ten (Recovery of Assessments improperly levied), Claim Eleven (Injunctive Relief/Specific Performance), Claim Twelve (Declaratory Judgment), Claim Thirteen (Declaratory Judgment), Claim Fourteen (Damages for failure to provide access to corporate records).

3. On June 30, 2014, Defendant filed the Motions seeking, primarily, dismissal of all claims pursuant to Rule 12(b)(6) and, alternatively, that Plaintiff be ordered to provide a more definite statement pursuant to Rule 12(e).

4. The Motions have been fully briefed and argued, and are ripe for determination.

FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges that:

5.      Plaintiff is a North Carolina corporation with its principal place of business in New Hanover County. Plaintiff is the owner of Lot 6 as described in New Hanover County Book of Maps 44, Page 206.[2]

6.      Defendant is a North Carolina corporation with its principal place of business in New Hanover County.[3]

7.      The Amended Complaint does not allege what the relationship is between the Plaintiff and Defendant.  From information provided in Plaintiff's brief and by Plaintiff's counsel at oral argument, the Court understands the Plaintiff to be a member of Defendant property owners association.

8.      Defendant has authority to levy assessments from members of its association pursuant to unidentified "governing documents," but Plaintiff alleges that Defendant has exercised such authority and collected assessments under a "null and void" agreement, and not under the appropriate "Protective Covenants."[4] These assessments include General Assessments, Special Assessments, Dumpster Assessments, Storm Water Assessments, and Lots 3/5/6 Storm Water Assessments.[5]  The Amended Complaint does not identify the specific dates or amounts of the assessments.

9.      Plaintiff alleges that some, if not all, of these assessments were improperly levied by Defendant and, in doing so, Defendant has collected funds it has no right to collect from Plaintiff.[6] Among the assessments allegedly improperly levied by Defendant was an

---

[2] Am. Compl. ¶ 1.
[3] *Id.* ¶ 2.
[4] *Id.* ¶¶ 26, 27 and 30.
[5] *Id.* ¶ 3.
[6] *Id.* ¶ 4.

assessment for an erosion control pond serving several parcels under the management and/or ownership of Defendant.[7]

10.     The Amended Complaint alleges that Defendant made the assessments "under the claimed authority of a document entitled Commercial Property Management Agreement dated June 30, 2014 (hereinafter referred to as 'CPMA')."[8] Plaintiff alleges, however, that the CPMA "confers no authority actual, nor apparent, upon" Defendant to perform the acts of which Plaintiff complains.[9]

11.     Plaintiff alleges that Defendant has converted funds received on account of these assessments and that Defendant has been unjustly enriched by Plaintiff's payment of the improper assessments.[10] Moreover, Plaintiff alleges that it is entitled to an accounting and inspection of Defendant's records related to these assessments, and that it should recover damages for Defendant's refusal to permit inspection rights and for the assessments improperly levied and paid.[11]

12.     Plaintiff also alleges that there exist a number of actual and genuine controversies between Plaintiff and Defendant for which Plaintiff is entitled to seek declaratory relief including: what assessments Defendant may collect;[12] what, if any, authority is conferred on Defendant by the CPMA;[13] the identity of the proper officers, directors, and registered agent for Defendant, and other corporate governance matters

---

[7] *Id.* ¶¶ 38-39.
[8] *Id.* ¶ 26.
[9] *Id.* ¶ 27.
[10] *Id.* ¶¶ 9, 15.
[11] *Id.* ¶¶ 21, 24, 30-31, 42-46.
[12] *Id.* ¶ 7.
[13] *Id.* ¶ 28.

related to Defendant;[14] and how assessments should be levied in relation to the erosion control pond.[15]

<u>DISCUSSION</u>

13.     The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id*. The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (citations omitted).

14.     A Rule 12(b)(6) motion should be granted when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

15.     A motion for a more definite statement pursuant to Rule 12(e) should be granted when "a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." G.S. § 1A-1, Rule 12(e). A motion for a more definite statement should only be granted if the pleading fails to meet the requirements of Rule 8 and, therefore, fails to give notice to the opposing party of the nature of the claim. *See Ross v. Ross*, 33 N.C. App. 447, 454 (1977).

---

[14] *Id*. ¶ 36.
[15] *Id*. ¶ 40.

Although generally disfavored, a motion for a more definite statement "rests in the sound discretion of the trial judge." *Id.*

### Claim Three (Conversion)

16.     In North Carolina, conversion is defined as: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Estate of Graham v. Morrison*, 168 N.C. App. 368, 371 (2005). "At its core, conversion 'is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . .'" *Tai Sports, Inc. v. Hall*, 2012 NCBC 62, ¶ 108 (N.C. Super. Ct. 2012) (quoting *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 532 (2001)). Ultimately, there are "two essential elements [that] are necessary in a complaint for conversion – there must be ownership in the plaintiff and a wrongful conversion by defendant." *Lake Mary, L.P.*, 145 N.C. App. at 532.

17.     "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310-311 (2004) (internal citations omitted). Upon the making of a required demand, the "absolute, unqualified refusal to surrender . . . is of course a conversion." *Hoch v. Young*, 63 N.C. App. 480, 483 (1983) (internal citations omitted).

18.     Additionally, where the property at issue is money, "[t]he general rule is that money may be the subject of an action for conversion only when it is capable of being identified and described." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012). This identification does not require tracing of actual currency, but that a specific sum be identified that is subject to the alleged conversion. *Id.* at 528-29. *See also Wake County v. Hotels.com, L.P.*, __ N.C. App. __, 762 S.E.2d 477, 489-90 (2014) (finding that plaintiff's claim for conversion based on defendant's withholding of tax

overpayments was properly dismissed where the plaintiff identified only "a category of monies allegedly owed" and did not adequately identify the money allegedly converted by, *inter alia*, "specific amount" or other identifying information).

19.     Here, Plaintiff alleges that Defendant made assessments against Plaintiff and that Plaintiff made payment to Defendant. Plaintiff does not allege that its payments of the assessments was anything other than voluntary.   Plaintiff now disputes Defendant's authority to make the assessments, and alleges that the assessments it paid "should be returned to [Plaintiff]."[16] Since Plaintiff seeks to maintain a conversion claim for money it voluntarily paid to Defendant, Plaintiff must have first made a demand for a return of such money. *See White*, 166 N.C. App. at 310-311 (requiring a demand and refusal to return where "the defendant has merely come rightfully into possession and then refused to surrender" the property in question). Plaintiff does not allege that it has made a demand, nor that Defendant has refused such a demand. In addition, Plaintiff has not identified any specific payment it made to Defendant by amount or date, or otherwise sufficiently identified the money alleged to have been converted.  Rather Plaintiff has simply identified a category of money, payments for assessments, which it alleges were converted. *See Variety Wholesalers, Inc.*, 365 N.C. at 528-29; *see also Hotels.com, L.P.*, __ N.C. App. at __, 762 S.E.2d at 489-90.

20.     Accordingly, because Plaintiff has failed to sufficiently allege the property allegedly converted and, to the extent required, has failed to allege a demand for return of that property, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be GRANTED as to Claim Three.

### Claims Four and Fourteen (Breach of Fiduciary Duty)

---

[16] *Id.* ¶ 9.

21. In Claim Four, Plaintiff alleges in conclusory fashion that Defendant "occupies. . . a position of confidence and trust" with Plaintiff and owes Plaintiff a fiduciary duty and that Defendant's "statements and actions" have breached a fiduciary duty owed to Plaintiff.[17] In Claim Fourteen, Plaintiff recasts its allegations that Defendant has refused to permit Plaintiff to inspect books and records as a breach of fiduciary duty claim.[18] Plaintiff, however, has not alleged any facts to support its conclusion that a fiduciary relationship existed between Defendant and Plaintiff.

22. A claim for breach of fiduciary duty requires three elements: (1) the existence of a fiduciary duty, (2) the breach of such duty, and (3) that the plaintiff suffered damages as a result of the breach of duty. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). In North Carolina, a fiduciary duty can arise by operation of law (a *de jure* fiduciary relationship) or based on the facts and circumstances (a *de facto* fiduciary relationship). *See Lockerman v. South River Elec. Membership Corp.*, 2012 NCBC 44, ¶ 59 (2012).

23. A de jure fiduciary relationship arises as a matter of law because of the nature of the relationship between the parties, "such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and cestui que trust." *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC 7, ¶ 89 (N.C. Super. Ct. 2012) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)).

24. A *de facto* fiduciary relationship may arise when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Harrold v. Dowd*, 149 N.C. App. 777, 784 (2002). Such a fiduciary relationship "extends to any possible case in which a

---

[17] Am. Compl. ¶¶ 11-12.
[18] *Id.* ¶¶ 44-45.

fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*." *Dalton v. Camp*, 353 N.C. 647, 650-51 (2001) (emphasis in original) (internal citations omitted). Finding this type of fiduciary relationship requires an intense factual inquiry and the standard is demanding. "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347-48 (4th Cir. 1998); *see also BDM Invs.,* 2012 NCBC 7.

25.     Here, Plaintiff is a member of Defendant property owners association and it alleges that it is a party to some type of agreement or agreements with Defendant that govern Defendant's authority to make certain assessments.  Plaintiff contends that this relationship obligates Defendant to administer the money collected as assessments "for a common purpose the fair and equitable benefit of all members of the association."[19]  Plaintiff has not cited any authority, nor has the Court found any authority, for the proposition that this type of relationship creates a fiduciary relationship as a matter of law.  Moreover, as Plaintiff concedes,[20] the relationship between the parties is fundamentally a contractual relationship. However, a contractual relationship, standing alone, does not create a fiduciary relationship. *See Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992) (recognizing that "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties" established by contract law).

26.     Based on the foregoing, it is clear that Plaintiff's relationship with Defendant is not a de jure fiduciary relationship.  Accordingly, in order to state a claim for breach of

---

[19] Pl.'s Br. Resp. Mot. Dismiss 4.
[20] *See id.* at 5.

fiduciary duty, Plaintiff must allege facts that would support the existence of a de facto fiduciary relationship between the parties.

27. The Amended Complaint fails to allege any facts to support a fiduciary relationship. At bottom, Plaintiff has only alleged that Defendant was authorized, by some as of yet unidentified governing document or documents, to levy and collect assessments from Plaintiff and other lot owners. Plaintiff contends in its brief in response to the Motions, though does not allege in the Amended Complaint, that Defendant was then tasked with allocating those funds for purposes common to all lot owners in the Progress Point development.[21]

28. Even accepting Plaintiff's allegations as true, nothing in the Amended Complaint supports the conclusion that the relationship between the parties is such that Defendant "figuratively holds all the cards." *See Broussard*, 155 F.3d at 347-48. Plaintiff does not allege any facts to suggest the kind of "domination and influence" on the part of Defendant required to give rise to a fiduciary duty. *See Dalton*, 353 N.C. at 650-51 (finding that employee charged with managerial duties and acting "in good faith and with due regard to the interests" of his employer did not owe a fiduciary duty because there was no indication of "domination and influence"). Plaintiff's allegations here "merely serve to define the nature of" the relationship between a property owners association and its members. *See id*. Ultimately, the Amended Complaint fails to suggest any kind of "domination and influence" by Defendant and, because this is an "essential component of any fiduciary relationship," such failure is fatal to Plaintiff's de facto fiduciary claim. *Id*.

---

[21] *Id.*, p. 4.

29.     Because Plaintiff has failed to sufficiently allege the existence of a fiduciary relationship between the parties, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be GRANTED as to Claims Four and Fourteen.

### Claim Five (Unjust Enrichment)

30.     "When one person confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will be required to make restitution therefor." *Siskron v. Temel-Peck Enters., Inc.*, 26 N.C. App. 397, 390 (1975). "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. . . The benefit must not be gratuitous and it must be measurable." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). Moreover, a "claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Hinson v. United Fin. Servs.*, 123 N.C. App. 469, 473 (1996). Accordingly, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Booe*, 322 N.C. at 570. *See also Mancuso v. Burton Farm Development Co., LLC*, __ N.C. App. __, 748 S.E.2d 738, 743 (2013).

31.     Plaintiff contends that Defendant levied the assessment against Plaintiff under authority of "the governing documents" and that "the governing documents of the association are a contract."[22] Plaintiff argues that it is entitled to pursue its action challenging Defendant's authority to levy the assessments as a contract claim. Since Plaintiff concedes the assessments at issue are fundamentally contractual, Plaintiff's remedy lies in enforcement of the contractual provisions, not in a claim for unjust enrichment. *See Hinson*, 123 N.C. App. at 473.

---

[22] *See* Pl.'s Br. Resp. Mot. Dismiss pp. 5-6.

32.    Accordingly, for the reasons stated above, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be GRANTED as to Claim Five.

### Claim Six (Punitive Damages)

33.    In North Carolina, punitive damages "may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of" the enumerated aggravating factors in G.S. § 1D-15 are present, including fraud, malice, and willful or wanton conduct. G.S. § 1D-15(a). The North Carolina Court of Appeals has explained that punitive damages "do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action[.] . . . If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." *Idanza v. Harper*, 169 N.C. App. 776, 784 (2005). In *Idanza*, the Court of Appeals held that once the trial court dismissed all of the defendant's counterclaims that would support an award of punitive damages "[the] defendant ha[d] no basis on which to claim punitive damages." *Id.*

34.    In this case, Plaintiff alleges an independent cause of action for punitive damages and prays for recovery of punitive damages generally in its prayer for relief. The Court has, herein, dismissed Plaintiff's claims that would have support an award of punitive damages. Plaintiff's only remaining claims are based on alleged breaches of contract, violation of a statutory right to review Defendant's books and records, and for declaratory relief. Since the claims on which Plaintiff bases its claim for punitive damages fail, so too must Plaintiff's claim for punitive damages. *See Idanza*, 169 N.C. App. at 784.

35.     Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be GRANTED WITHOUT PREJUDICE as to Claim Six.[23]

### Claim Eleven (Injunctive Relief/Specific Performance)

36.     In Claim Eleven, Plaintiff seeks an order requiring Defendant to "levy an Assessment on its constituent members to collect, marshall [*sic*] or recoup funds, monies and property from those constituent members . . . who were unjustly enriched and did not pay Assessments because of the actions, statements and conduct of" Defendant.[24] Though not expressed in the Amended Complaint, Plaintiff contends that Claim Eleven is a claim for specific performance of the "governing documents" of Defendant association.[25]

37.     "The remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the [C]ourt." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 333 (2011). Specific performance not only requires that a contract's terms be "so definite and certain" that the Court can determine whether the performance is in accord with the contract's terms, *see McKinnon*, 213 N.C. App. at 333, but also requires that there be no adequate remedy at law. *See Reeder v. Carter*, __ N.C. App. __, 740 S.E.2d 913, 918 (2013) (stating that a party seeking specific performance "must prove the legal remedy is inadequate").

38.     Here, Plaintiff has failed to allege any specific contractual basis for its specific performance claim. Plaintiff has not alleged any terms of the provision entitling Defendant to levy assessments or any other agreement between the parties that would provide a basis for specific performance. Plaintiff has simply failed to allege any facts from which the Court

---

[23] The Court grants Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) without prejudice, subject to Plaintiff's ability to prove, in discovery or at trial, aggravating factors as they relate to the Remaining Claims, as defined below.
[24] Am. Compl. ¶ 33.
[25] Pl.'s Br. Resp. Mot Dismiss, p. 5.

could ascertain what performance is being challenged and whether Defendant's performance under any agreement is in accord with the contractual duties assumed. *See McKinnon*, 213 N.C. App. at 333. Moreover, Plaintiff has failed to allege, even in a conclusory manner, that any remedy at law would be inadequate.

39. Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be GRANTED as to Claim Eleven.

### Plaintiff's Remaining Claims

40. As the North Carolina Court of Appeals has recognized, "mere vagueness is not ground for a motion to dismiss," but such a complaint is properly attacked by a motion pursuant to Rule 12(e). *Schloss Outdoor Advertising Co. v. City of Charlotte*, 50 N.C. App. 150, 154 (1980). Here, Plaintiff's remaining claims (Claims One, Two, Seven, Eight, Nine, Ten, Twelve, and Thirteen, collectively "Remaining Claims") appear to the Court to fall within this category of claims.

41. However sparse the factual allegations in the Remaining Claims, nothing in these claims reveals that no law supports Plaintiff's claims, that some essential element of Plaintiff's claim is missing, or that some fact disclosed in the Amended Complaint necessarily defeats these claims. *See Jackson*, 318 N.C. at 175. However, it is clear to the Court that these claims fail to give Defendant notice of the "transactions, occurrences, or series of transactions or occurrences" giving rise to the Remaining Claims. *See* G.S. § 1A-1, Rule 8(a)(1).

42. Claims One and Ten appear to the Court to relate to the levying and collection of assessments that Plaintiff alleges Defendant was not authorized to levy and collect. Nothing in these claims gives any notice of which assessments Plaintiff intends to challenge. The Amended Complaint appears to recognize that Defendant may be entitled to levy some

assessments.[26] Given this, Claims One and Ten, as currently pleaded, cannot possibly give Defendant sufficient notice as required by Rule 8 and, therefore, in the Court's discretion, Defendant's Motion for a More Definite Statement should be GRANTED as to these claims.

43.     Claims Seven and Eight appear to the Court to state a claim based on some right of Plaintiff to inspect the books and records of Defendant, and to demand an accounting of what Defendant has done with monies collected. These claims do not provide what documents or law Plaintiff contends gives rise to such rights,[27] nor do they provide any notice as to which documents and records Plaintiff seeks or from what time period Plaintiff seeks records. Here again, these claims are so vaguely pleaded that Defendant cannot reasonably be required to frame a responsive pleading. Accordingly, Defendant's Motion for a More Definite Statement, in the Court's discretion, should be GRANTED as to Claims Seven and Eight.

44.     Finally, Claims Two, Nine, Twelve, and Thirteen all purport to seek relief under North Carolina's Declaratory Judgment Act, G.S. § 1-253, *et seq.* These claims, however, do not sufficiently give notice of the nature of the actual and genuine controversy alleged therein. Claims Two and Thirteen appear to the Court to arise from Defendant's levying of improper assessments but, as described above, Plaintiff has not given sufficient notice of the assessments it contends were improper. Accordingly, Defendants have not been given sufficient notice of the "transactions or occurrences" that give rise to the actual and genuine controversy. Claim Twelve involves the identity and rights and duties of officers and directors, but that claim does not indicate the entity of which Plaintiff seeks a declaration.

---

[26] *See* Am. Compl. ¶ 7 (alleging a genuine controversy regarding "what should *properly* be included in [a]ssessments and what should *properly* be collected from" Plaintiff) (emphasis added).

[27] In Plaintiff's Brief, at pages 10-11, it contends that its right to inspect Defendant's books and records arises from G.S. §47F-1-101, *et seq.* (North Carolina Planned Community Act). This statutory basis for such right is not alleged in the Amended Complaint, nor are any facts establishing that Plaintiff and Defendant are covered by the Act.

Moreover, Plaintiff does not give sufficient notice of the nature of the controversy surrounding these directors and officers. Plaintiff's Claim Thirteen also fails to give sufficient notice of the nature of the controversy surrounding the erosion control pond to require Defendant to frame a responsive pleading. As such, the Court finds, in its discretion, that Defendant's Motion for a More Definite Statement should be GRANTED as to Claims Two, Nine, Twelve, and Thirteen.

THEREFORE, IT IS ORDERED that:

45.      Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED, in part, as to Claim Three, Claim Four, Claim Five, Claim Eleven, and Claim Fourteen. Claims Three, Four, Five, Eleven, and Fourteen are hereby DISMISSED.

46.      Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED, in part, as to Claim Six. Claim Six is hereby DISMISSED, WITHOUT PREJUDICE.

47.      Defendant's Motion for a More Definite Statement pursuant to Rule 12(e) is GRANTED, in part, as to Claim One, Claim Two, Claim Seven, Claim Eight, Claim Nine, Claim Ten, Claim Twelve, and Claim Thirteen.

48.      Except as expressly GRANTED herein, the Motions are DENIED.

This the 2nd day of March, 2015.